UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
**LORI M. WILKES**,                                     :

                Plaintiff,          :     **MEMORANDUM
                                                              DECISION AND ORDER**
                                                        :

          **-** against **-**                  :     19-CV-04296 (AMD)

**COMMISSIONER OF SOCIAL
SECURITY,**                                             :

              Defendant.          :
---------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff appeals the Commissioner of Social Security's decision that she is

not disabled for purposes of receiving disability insurance benefits ("DIB") under Title II of the

Social Security Act.  For the reasons that follow, I grant the plaintiff's motion for judgment on

the pleadings, deny the Commissioner's cross-motion, and remand the case for further

proceedings.

## BACKGROUND

On December 10, 2013, the plaintiff, who is obese and has a history of arthritis and

fibromyalgia, fell as she was leaving work, causing pain to her neck, left knee and lower back.

(Tr. 304-307, 430-32.)  She went to the hospital, where physicians diagnosed her with a left knee

contusion and sprains in her cervical spine and lumbar spine.  She was referred to an orthopedist,

who diagnosed with her with a meniscal tear and herniated discs in her neck and lower back.

(Tr. 430-32.)  The plaintiff, an insurance counselor, did not return to work and began receiving

workers' compensation.  (*Id.*)  An orthopedist prescribed physical therapy, steroid injections and

oral medication, including Medrol, oxycodone, Lyrica, and Ambien, to manage her pain and

swelling and to help her sleep.  (Tr. 430-38.)[1]  She also had a left knee arthroscopy to repair a

left knee medial meniscal tear.  (Tr. 467.)

Almost two years later, in November of 2015, the plaintiff was a passenger in a car

accident where the car "was totaled."  (Tr. 460.)  Although the hospital x-rays were negative for

any acute injuries, she returned to her orthopedist and complained of worsening pain in her neck,

back and knees after "[b]oth knees hit the dashboard[.]"  (Tr. 460.)  Her orthopedist encouraged

her to resume physical therapy and ordered additional imaging, which revealed a right medial

meniscal tear, additional bulging discs in her lumbar spine, and further progression of the

herniated discs in her cervical spine.  (Tr. 446, 454, 560-63, 568-69.)  Her physician

recommended arthroscopic surgery in the plaintiff's right knee to repair the meniscal tear, which

she underwent in 2016.  (Tr. 442-46.)

On June 29, 2016, the plaintiff, represented by counsel, applied for benefits with a

disability onset date of December 10, 2013, alleging disability due to cervical and lumbar sprain,

bilateral knee pain, fibromyalgia and arthritis.  (Tr. 10, 158, 224.)  The Commissioner denied the

application.  Administrative Law Judge ("ALJ") Patricia M. French held a video hearing on July

12, 2018, at which the plaintiff, represented by counsel, and a vocational expert testified.  (Tr.

28-82.)  In an August 21, 2018 decision, the ALJ denied the plaintiff's claim.  (Tr. 10-22.)  She

found that the plaintiff had the following severe impairments: degenerative disc disease of the

cervical spine, degenerative joint disease in both knees, Graves' disease, obesity and

impingement syndrome of the left shoulder, but concluded that the plaintiff's impairments did

not meet any of the applicable listings, and that the plaintiff had the residual functional capacity

---

[1] In 2014, her physician also recommended an "anterior compression discectomy and fusion" to alleviate some of the plaintiff's symptoms, but the plaintiff did not have the surgery because she was "afraid to have surgery on [her] neck."  (Tr. 38.)

("RFC") to perform light work with certain restrictions.  (Tr. 12.)[2]

On May 21, 2019, the Appeals Council denied the plaintiff's request for review.  (Tr. 1-4.)  The plaintiff appealed *pro se* on July 24, 2019.  (ECF No. 1.)  The government moved for judgment on the pleadings; the plaintiff filed a letter in opposition.  (ECF Nos. 12, 14.)

## LEGAL STANDARD

A district court reviewing a final decision of the Commissioner "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005).  If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld.  42 U.S.C. § 405(g).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted).

The court must defer to the Commissioner's factual findings when they are "supported by substantial evidence," but not "[w]here an error of law has been made that might have affected the disposition of the case."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (citations omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."  *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).  Moreover, the district court should remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit

---

[2] The ALJ did not discuss the plaintiff's fibromyalgia diagnosis or her history of arthritis.

findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004).

## DISCUSSION

The plaintiff disputes ALJ French's RFC determination, as well as her findings that the plaintiff could perform other jobs in the national economy. She also challenges the ALJ's determination that she was ineligible for benefits under the applicable regulations, and argues that remand is appropriate so that the ALJ can consider changes in her health as well as her history of fibromyalgia. Because the plaintiff is proceeding *pro se*, her complaint is held to less stringent standards than pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008). I read the plaintiff's *pro se* complaint and opposition liberally, and interpret them to raise the strongest arguments they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). After reviewing the record, I conclude that remand is warranted.

## I. RFC Determination

The ALJ must assess a plaintiff's residual functional capacity "based on all the relevant evidence in the case record." *Colegrove v. Comm'r of Soc. Sec.*, 399 F. Supp. 2d 185, 192 (W.D.N.Y. 2005) (citing 20 C.F.R. § 416.945(a)(1)). The assessment must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Martinez v. Colvin*, 286 F. Supp. 3d 539, 544 (W.D.N.Y. 2017) (citation and quotation omitted).

Dr. Richard Obedian, an orthopedic surgeon, began treating the plaintiff in January of 2014 after the plaintiff slipped on black ice in a parking lot and hit her head, lower back and left knee. (Tr. 304-307, 430-32.) Dr. Obedian observed diminished sensation and motor strength in

the plaintiff's cervical spine and left hand and ordered additional imaging, which showed two herniated discs in the plaintiff's cervical spine. (Tr. 427-32.)  He prescribed physical therapy three times a week and oral pain medication, and recommended an anterior cervical discectomy and fusion.  He also recommended arthroscopic surgery to repair the meniscal tear in her left knee.  The plaintiff had the surgery in January of 2015, and her symptoms began to improve, although she continued to complain about neck and lower back pain, as well as numbness in her hand.

During this period, the plaintiff continued to be evaluated by independent physicians who submitted periodic reports to her insurance company. These physicians agreed with Dr. Obedian's diagnosis, observed that her disability ranged from "mild" to "partial" and had not fully improved, and concluded that she could return to work with some restrictions on lifting, kneeling, bending, squatting, standing or walking. (Tr. 403-13.)   They also recommended that she receive steroid injections for her cervical and lumbar spine to help manage her pain. (Tr. 761-62.)

In November of 2015, the plaintiff was injured in a car accident.  After the accident, she returned to Dr. Obedian and said her neck, back and knee pain had worsened after "[b]oth knees hit the dashboard." (Tr. 460.)  The doctor encouraged her to resume physical therapy and ordered additional imaging, which revealed a right medial meniscal tear, additional bulging discs in her lumbar spine and worsening herniated discs in her cervical spine. (Tr. 446, 454, 560-63, 568-69.)  Dr. Obedian also recommended arthroscopic surgery to repair a meniscal tear in the plaintiff's right knee. (Tr. 442-44.)  She had the surgery in 2016. (Tr. 442-46.)  Physicians retained by the plaintiff's insurance opined that the plaintiff could walk normally and could eventually return to work with some restrictions.  However, Dr. Obedian evaluated the plaintiff

5

in June of 2018 and opined that the plaintiff was not capable of even "low stress" jobs because her ongoing pain would interfere with her attention and concentration. (Tr. 766-70.) He concluded that the plaintiff could sit or stand for only fifteen minutes at a time, and could use her hands, fingers or arms for only five percent of the workday. (Tr. 767-69.)

Based on her review of the record, the ALJ found that the plaintiff had the capacity to do "light" work with certain restrictions: she could turn her head occasionally, never twist or crouch, never climb ladders, ropes, or scaffolds, and she should avoid moving machinery and unprotected heights and limit overhead reaching. (Tr. 14.) She would need to stretch or change positions throughout the day, be "off-task" for up to ten percent of her workday and be absent for up to one day per month. (*Id.*) ALJ French based her conclusions on the plaintiff's medical history and examinations, which showed that the plaintiff had severe impairments, but no peripheral neuropathy or lumbar radiculopathy. Moreover, she walked normally, moved freely, and sat comfortably during most of her examinations. (Tr. 17, 742.) In "an abundance of caution," ALJ French restricted the plaintiff from turning her head, reaching, crouching, climbing, and required her to have "off task time" to accommodate her pain. (Tr. 17.)

ALJ French gave a detailed explanation for her findings, and discussed almost all of the plaintiff's symptoms and treatment history. She did not, however, discuss two chronic conditions—arthritis and fibromyalgia—and focused instead on the plaintiff's accidents in 2013 and 2015. *See Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 150-51 (2d Cir. 1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to [her].") It may very well be that the ALJ concluded that neither condition affected the plaintiff's ability to work, since both conditions were being managed with medication, and were not the chief source of her complaints. Nevertheless,

6

remand is appropriate "[i]n circumstances . . . where the ALJ has stated no findings or

conclusions with respect to a claim of disabling impairment, especially one to which the claimant

arguably has demonstrated the symptoms described . . . ." *Estrada ex rel. E.E. v. Astrue*, No. 08-

CV-3427, 2010 WL 3924686, at *3 (E.D.N.Y. Sept. 29, 2010).  While the medical record and

the plaintiff's daily level of activity may ultimately support the ALJ's conclusion about the

plaintiff's RFC, the ALJ should explain on remand the extent to which the plaintiff's chronic

conditions affected her RFC.

      The plaintiff also says her RFC determination should be different because she was "in

better health" when she applied for benefits, and that she is now pre-diabetic, "grossly obese,"

has "arthritis in both knees" and needs "knee replacements."  (ECF No. 14 at 1.)  This is not a

basis for remand.  A court "may at any time order additional evidence to be taken before the

Commissioner of Social Security, but only upon a showing that there is new evidence which is

material and that there is good cause for the failure to incorporate such evidence into the record

in a prior proceeding[.]"  42 U.S.C. § 405(g); *see also Lisa v. Sec'y of Dep't of Health & Human

Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) (citation and quotation omitted)).  The plaintiff has not

demonstrated that there is any new evidence for the ALJ to consider, let alone that she tried to

submit this new evidence or has good cause for not doing so.[3]

## II. ALJ Determination of the Plaintiff's Work Capacity

      The plaintiff also challenges the ALJ's conclusion that the plaintiff could either resume

her past relevant work as an administrative assistant and secretary, or do other work existing in

"significant numbers" in the national economy.  (Tr. 20-21.)  Specifically, the plaintiff argues

that the ALJ did not "tak[e] into consideration that [her] health would not allow for [her] to even

---

[3] The ALJ also discussed the plaintiff's weight in her opinion, and incorporated limitations caused by the plaintiff's obesity into her RFC.

obtain suitable work without being fired based on missing work due to all the underlying health issues." (ECF No. 14.)

At step four, the Commissioner must determine whether the plaintiff can perform her past relevant work. If the plaintiff cannot perform her past relevant work, "the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)). The ALJ can make this determination "either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." *Id*. Under the first approach, the ALJ considers the plaintiff's age, physical ability, education and work experience, and then determines by referring to the applicable rule in the Medical Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 whether jobs exist in the national economy that she can perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983). Under the second approach, the ALJ can solicit testimony from a vocational expert as to "the existence and number of jobs in the national economy that a claimant with a particular RFC can perform." *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 450 (N.D.N.Y. 2005). An ALJ may rely on a vocational expert's testimony as long as "there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion," and those assumptions "accurately reflect the limitations and capabilities of the claimant involved[.]" *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citations and quotations omitted).

The plaintiff testified that she could sit for an hour or two before she needed to stand, and that she could stand only for thirty minutes at a time. (Tr. 47-48.) She also testified that she could walk two to three blocks before needing to rest, and she tried not to lift more than ten

pounds.  (Tr. 48.)   Based on the plaintiff's testimony and the medical record, the ALJ asked a

vocational expert to describe what work a hypothetical plaintiff with the plaintiff's RFC and

physical limitations could perform.  The vocational expert testified that someone with the

plaintiff's age, education, work experience and residual functional capacity could not return to

her past work as an administrative assistant or legal secretary because she would need to be off-

task for ten percent of the day, and be able to stand up and sit down during the workday.  (Tr. 76-

77.)  At first, the vocational expert concluded that a hypothetical person with the plaintiff's

limitations could work as a car rental agent or front desk receptionist, but then concluded that a

person with the plaintiff's limitations could not do either job because she would need to be "off-

task" for up to ten percent of the work day.  (Tr. 77.)  There were, however, other jobs that

someone with the plaintiff's limitations could do, including working as a "price marker."  (Tr.

76-77.)

      The government concedes that in her analysis of the vocational expert's testimony, the

ALJ made errors at steps four and five.  At step four, the ALJ concluded that the plaintiff could

perform her past relevant work as an administrative assistant and legal secretary, even though the

vocational expert reached the opposite conclusion.  (Tr. 20.)[4]  At step five, the ALJ cited the

applicable Medical Vocational Guidelines and the vocational expert's testimony, and found that

the plaintiff could perform other work existing in significant numbers in the national economy

based on her age, her alleged onset date, her education, her past work experience and transferable

skills and her RFC.  (Tr. 20-21); *see* 20 C.F.R. § 404.1520(f).  Based on those factors, ALJ

French concluded that the plaintiff could work as an automobile rental agent and front desk

receptionist, although the vocational expert said she could not.  (Tr. 77-78.)

---

[4] The government "is not relying on the ALJ's step four determination in this matter" because of this error.  (ECF No. 12 at 21.)

The government argues that the ALJ would have reached the same result without these errors, and that there are still significant numbers of jobs in the national economy that the plaintiff can perform.  (ECF No. 12 at 20-23.)[5]  But the district court does not have the authority to extrapolate a conclusion from the record if the ALJ's original conclusion is not supported by substantial evidence.  "Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision."  *Gravel*, 360 F. Supp. 2d at 453 (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996)).  The inconsistencies between the ALJ's determination and the vocational expert's testimony requires clarification.[6]  On remand, the ALJ should consider whether the plaintiff's age and physical limitations prevent her from returning to her prior employment or seeking out a new job.  If necessary, the ALJ may want to consult with another vocational expert to confirm which tasks the plaintiff can and cannot perform, and whether there are any jobs she can perform in light of those limitations.

### III.  Listings Analysis

Finally, the plaintiff challenges the ALJ's determination that she did not meet the requirements for any of the applicable listings.  Under listing 1.04(A), a claimant is presumptively disabled if she has "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture[ ], resulting in compromise of a nerve root . . . or spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting

---

[5] The ALJ appears to have put the plaintiff in the wrong age bracket, but then used the correct age category in her disability status analysis.

[6] Because the ALJ will reconsider the plaintiff's RFC on remand, she should also revisit the step five analysis.  *Petersen v. Astrue*, 2 F. Supp. 3d 223, 239 (N.D.N.Y. 2012).

and supine)."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).  Under listing 1.02, a claimant

must establish "major dysfunction of a joint . . . resulting in inability to ambulate effectively[.]"

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.02.[7]  The ALJ concluded that the plaintiff did not meet

either listing because, apart from periodic use of a cane, she had a normal gait and did not need

an assistance device.  (Tr. 13.)  In reaching that conclusion, the ALJ considered the effect that

the plaintiff's obesity "may have in regard to performing basic work related activities," (Tr. 14)

but observed that there was no evidence of the listing 1.04 conditions, including spinal stenosis,

pseudoclaudication or positive straight leg raising tests.  (Tr. 13.)  This decision was supported

by the evidence.

### CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted, the Commissioner's

cross-motion is denied, and the case is remanded for further proceedings consistent with this

opinion.


**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge


Dated: Brooklyn, New York
        August 31, 2020

---

[7] For both listings, an inability to ambulate effectively is defined as "an extreme limitation of the ability to walk."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B2b.